No. 13-1687

_____

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

_____

EQUAL EMPLOYMENT
OPPORTUNITY COMMISSION,

    Plaintiff-Appellant,

    v.

PROPAK LOGISTICS, INC.,

    Defendant-Appellee.

_____

United States District Court for the
Western District of North Carolina
Civil Action No. 1:09-cv-00311-MR-DLH

_____

PLAINTIFF-APPELLANT EQUAL EMPLOYMENT
OPPORTUNITY COMMISSION's OPENING BRIEF

_____

P. DAVID LOPEZ
General Counsel

LORRAINE C. DAVIS
Acting Associate General Counsel

SUSAN R. OXFORD
Attorney, EEOC
131 M Street, N.E.
Washington, DC 20507
Tel:  (202) 663-4791
susan.oxford@eeoc.gov

# TABLE OF CONTENTS

page

Table of Authorities ................................................................................. ii

STATEMENT OF JURISDICTION .............................................................. 1

STATEMENT OF THE ISSUES ................................................................... 2

STATEMENT OF THE CASE ...................................................................... 3

    A.  Nature of the case and course of proceedings .................................. ......3

    B.  Statement of Facts ................................................................. ......5

    C.  District court opinion ............................................................ .....11

STANDARD OF REVIEW ........................................................................ 14

SUMMARY OF ARGUMENT ................................................................... 15

ARGUMENT ........................................................................................... 17

The District Court Erred in Awarding Fees Against the EEOC
because Laches does not Apply Against the Government and
because the EEOC, in Any Event, Reasonably Believed Propak
had Failed to Demonstrate a Successful Laches Defense ....................................... 17

A. The district court erred as a matter of law in awarding fees
against the EEOC because laches cannot be applied to suits
by an agency of the federal government to enforce the public interest ................... 22

B. Before and after filing suit, the EEOC reasonably believed
Propak had not established the "prejudice" element of a
laches defense. ....................................................................................... 28

C. In assessing whether there was unreasonable or unjustified delay, the district court erred in considering the time during which the EEOC was investigating this matter. ......................................................44

D. Even including the investigation, the EEOC had a reasonable basis to argue the delay here was no unreasonable or unexplained.........................50

CONCLUSION ........................................................................................57

REQUEST FOR ORAL ARGUMENT .................................................57

CERTIFICATE OF COMPLIANCE.......................................................59

CERTIFICATE OF SERVICE

# TABLE OF AUTHORITIES

**Cases** **Page**

*Borg-Warner Protective Servs. Corp. v. EEOC*,
  245 F.3d 831 (D.C. Cir. 2001) ...............................................................56

*Christiansburg Garment Company v. EEOC*,
  434 U.S. 412 (1978) ...............................................14, 15, 17, 18, 54

*Cleveland Newspaper Guild, Local 1 v. Plain Dealer Pub. Co.*,
  839 F.2d 1147 (6th Cir. 1988) .............................................................32

*Costello v. United States*, 365 U.S. 265 (1961) ................................22, 24

*EEOC v. Am. Nat'l Bank*, 574 F.2d 1173 (4th Cir. 1978) ....................23, 26, 29, 34

*EEOC v. Am. Nat'l Bank*, 652 F.2d 1176 (4th Cir. 1981) ......................................56

*EEOC v. Autozone, Inc.*, 258 F. Supp. 2d 822 (W.D. Tenn. 2003) ...................48, 49

*EEOC v. Caterpillar, Inc.*, 409 F.3d 831 (7th Cir. 2005)........................................56

*EEOC v. Central Wholesalers, Inc.*, 573 F.3d 167 (4th Cir. 2009)........................14

*EEOC v. Chesapeake & Ohio Ry. Co.*, 577 F.2d 229 (4th Cir. 1978).........20, 26, 35

*EEOC v. Gen. Elec. Co.*, 532 F.2d 359 (4th Cir. 1976)....................................22, 24

*EEOC v. Great Atl. & Pac. Tea Co.*,
  735 F.2d 69 (3d Cir. 1984)................................................... 24, 25, 26, 30, passim

*EEOC v. Great Steaks, Inc.*, 667 F.3d 510 (4th Cir. 2012) ........................11, 14, 18

*EEOC v. Jacksonville Shipyards, Inc.*,
  690 F. Supp. 995 (M.D. Fla. 1988)..................................................................52, 53

*EEOC v. Keco Indus., Inc.*, 748 F.2d 1097 (6th Cir. 1984)....................................56

*EEOC v. Konica Minolta Bus. Solutions*, 639 F.3d 366 (7th Cir. 2011)................30

iii

*EEOC v. Liberty Loan Corp.*, 584 F.2d 853 (8th Cir. 1978) .....................................40

*EEOC v. Lockheed Martin Global Telecomms., Inc.*,
514 F. Supp. 2d 797 (D. Md. 2007) ...................................... 22, 33, 38, 49, passim

*EEOC v. Lucky Stores, Inc.*, 1982 WL 232 (E.D. Cal. April 1, 1982) ....................30

*EEOC v. Martin Processing, Inc.*,
533 F. Supp. 227 (W.D. Va. 1982) .........................................................19, 21, 22

*EEOC v. Massey-Ferguson, Inc.*, 622 F.2d 271 (7th Cir. 1980) .............................21

*EEOC v. Mitsubishi Motor Mfg. of Am., Inc.*,
990 F. Supp. 1059 (C.D. Ill. 1998) ................................................................25, 26

*EEOC v. Navy Fed. Credit Union*, 424 F.3d 397 (4th Cir. 2005) ...............14, 19, 23

*EEOC v. PBM Graphics, Inc.*,
877 F. Supp. 2d 334 (M.D.N.C. 2012) ....................................................................21

*EEOC v. Peterson, Howell & Heather, Inc.*,
702 F. Supp. 1213 (D. Md. 1989) ...........................................................................23

*EEOC v. Philips Colleges, Inc.*,
984 F. Supp. 1464 (M.D. Fla. 1997) ................................................................32, 38

*EEOC v. Radiator Specialty Co.*, 610 F.2d 178 (4th Cir. 1979) ...........20, 28, 29, 31

*EEOC v. Randstad*, 685 F.3d 433 (4th Cir. 2012) ....................................................56

*EEOC v. S. Car. Nat'l Bank*, 562 F.2d 329 (4th Cir. 1977) ...................................29

*EEOC v. Waffle House, Inc.*, 534 U.S. 279 (2002)...................................................24

*EEOC v. Watkins Motor Lines, Inc.*, 463 F.3d 436 (6th Cir. 2006) ............26, 38, 48

*EEOC v. Worthington, Moore & Jacobs, Inc.*,
582 F. Supp. 2d 731 (D. Md. 2008).....................................................20, 32, 35, 37

iv

*Fowler v. Blue Bell, Inc.*, 596 F.2d 1276 (5th Cir. 1979) ............................21, 32, 38

*Gen. Tel. Co. of NW v. EEOC*, 446 U.S. 318 (1980)................................24

*Georator Corp. v. EEOC*, 592 F.2d 765 (4th Cir. 1979)........................56

*Glymph v. Spartanburg Gen. Hosp.*, 783 F.2d 476 (4th Cir. 1986) .......................18

*Grand Canyon Trust v. Tucson Elec. Power Co.*,
    391 F.3d 979 (9th Cir. 2004) .............................................................21

*Haley Paint Co. v. E.I. Du Pont De Nemours & Co.*,
    279 F.R.D. 331 (D. Md. 2012)............................................................47

*Lyons P'ship v. Morris Costumes, Inc.*,
    243 F.3d 789 (4th Cir. 2001) ........................................................21, 46

*Nat'l Ass'n of Gov't Employees v. City Public Serv. Bd. of San Antonio*,
    40 F.3d 698 (5th Cir. 1994) ...............................................................48

*Nat'l RR Passenger Corp. v. Morgan*, 536 U.S. 101 (2002)...................................25

*Nat'l Wildlife Fed'n v. Hanson*, 859 F.2d 313, 318 (4th Cir. 1988) ................27, 50

*Occidental Life Ins. v. EEOC*, 432 U.S. 355 (1977)............... 23, 24, 32, 38, passim

*Priestley v. Astrue*, 651 F.3d 410 (4th Cir. 2011) ....................................................14

*Ray Commc'ns, Inc. v. Clear Channel Commc'ns, Inc.*,
    673 F.3d 294 (4th Cir. 2012) ...................................................20, 21, 48

*Sara Lee Corp. v. Kayser-Roth Corp.*,
    81 F.3d 455 (4th Cir. 1996) ...............................................................21

*United States v. Angell*, 292 F.3d 333 (2d Cir. 2002)...........................................22

*Westberry v. Gislaved Gummi AB*, 178 F.3d 257 (4th Cir. 1999) ...........................14

*What-A-Burger of Va., Inc. v. Whataburger, Inc. of Corpus Christi,
    Tex.*, 357 F.3d 441 (4th Cir. 2004)......................................................48

*White v. Daniel*, 909 F.2d 99 (4th Cir. 1990) ...............................................19, 21, 47

**Statutes**

28 U.S.C. § 1291 ................................................................................................1

42 U.S.C. §§ 2000e *et seq.*.............................................................................1, 3

42 U.S.C. § 2000e-5(b) ..........................................................................45, 47, 55

42 U.S.C. § 2000e-5(f)(1) ...............................................................................47

42 U.S.C. § 2000e-5(f)(3) ..................................................................................1

42 U.S.C. § 2000e-5(k) ....................................................................14, 17, 41


**Regulations**

29 C.F.R. § 1602.14 ......................................................................................38, 39


**Court Rules**

Fed. R. Evid. 201(b)(2) & (c)(2).......................................................................8

Fed. R. App. P. 4(a)(1)(B) ..................................................................................1


**Miscellaneous**

www.eeoc.gov/eeoc/statistics/enforcement/charges.cfm
    (last visited August 20, 2013) ………………………………………………6

## STATEMENT OF JURISDICTION

This Court has jurisdiction over this appeal pursuant to 28 U.S.C. § 1291, which provides the United States courts of appeals with jurisdiction over appeals from the final decisions of United States district courts.  The Equal Employment Opportunity Commission (EEOC or Commission) filed this lawsuit under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e *et seq.*  The United States District Court for the Western District of North Carolina had jurisdiction over the case pursuant to 42 U.S.C. § 2000e-5(f)(3), which confers on the federal district courts jurisdiction over actions brought under Title VII.  The district court entered final judgment dismissing EEOC's lawsuit on August 7, 2012.  JA-441 (R.42).[1]  On March 27, 2013, the district court awarded attorneys' fees against the EEOC.  JA-555-573 (R.57).  Pursuant to Rule 4(a)(1)(B) of the Federal Rules of Appellate Procedure, on May 24, 2013, the EEOC timely filed in district court the EEOC's Notice of Appeal from the district court's award of attorneys' fees.  JA-574 (R.58).

---

[1]  "JA" refers to the Joint Appendix filed with the EEOC's opening brief, and "R." refers to the district court docket number for the document in question.

# STATEMENT OF THE ISSUES

1.  Given the EEOC is an agency of the federal government and laches generally does not bar suits by the sovereign seeking to enforce the public interest, did the district court err as a matter of law when it imposed attorneys' fees on the EEOC on the ground that the EEOC acted unreasonably by filing this lawsuit and then opposing Defendant Propak's affirmative defense based on laches?

2.  Did the district court abuse its discretion when it imposed attorneys' fees on the EEOC, because laches requires a defendant to establish prejudice and the EEOC had a reasonable basis to believe Propak had not established prejudice, as Propak offered no information to support its bare claim of prejudice prior to suit and the information disclosed during discovery failed to demonstrate prejudice?

3.  Did the district court err as a matter of law when it included the time the EEOC spent conducting an administrative investigation in its finding of "unreasonable or unexplained delay" and then imposed attorneys' fees on that basis, because before conciliation failed, the EEOC did not have the right to file this lawsuit?

4.  Did the district court abuse its discretion when it imposed attorneys' fees on the EEOC, because the EEOC reasonably believed that the time that passed before the EEOC filed this lawsuit did not constitute "unreasonable or unexplained delay"?

## STATEMENT OF THE CASE

### A.  Nature of Case and Course of Proceedings

On August 12, 2009, the EEOC filed suit against Propak Logistics alleging Propak discriminated against a class of job applicants in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. 2000e *et seq.*, by refusing to hire them based on their national origin, non-Hispanic.  JA-8 (R.1).  Propak filed an Answer and simultaneously moved to dismiss the EEOC's complaint arguing, among other things, that the EEOC's lawsuit was barred by the doctrine of laches.  JA-63 (R.6) (Fifteenth Defense); JA-13 (R.4).  On November 30, 2009, the magistrate recommended the court deny Propak's motion.  JA-132-138 (R.11 at 6-12).  The magistrate reasoned that prior to discovery it was "not possible for a court to resolve a laches defense . . . or to make an informed decision as to a just and appropriate remedy."  JA-138 (R.11 at 12).

Eight months later, on August 6, 2010, the district court denied without prejudice Propak's motion to dismiss based on laches.  JA-226-228 (R.16 at 15-17).  The court indicated it would entertain the issue in a summary judgment motion, with or without further briefing and evidence by Propak, and the court directed the parties to confer and advise whether discovery was needed on this issue.  JA-227-228 (R.16 at 16-17).  In its September 7, 2010, order, the court acknowledged the parties' inability to agree on the need for discovery and directed

3

further briefing on the need for discovery.  JA-234-235 (R.19).  The court also directed the EEOC to "file the administrative and/or investigatory record with the Court" or explain why it could not be filed.  JA-235 (R.19 at 2).

On September 22, 2010, the EEOC explained why discovery was needed on the "prejudice" prong of Propak's laches defense.  JA-236-240 (R.20).  On the same date, the EEOC provided the court and Propak with selected portions of the EEOC's administrative record, along with an explanation for not filing the entire thirty-volume administrative record.  JA-242-244 (R.21).  Propak opposed the EEOC's request for discovery.  JA-265-269 (R.22).

Ten months later, on August 22, 2011, the district court granted the EEOC's motion for limited discovery.  JA-270-278 (R.23).  The court expressly found "a limited period of discovery is necessary" on the issue of "whether [Propak] has sustained prejudice as a result of the delay" and granted EEOC forty-five days to complete such discovery.  JA-276-277 (R.23 at 7-8).  Thereafter, Propak moved for summary judgment.  JA-279-280 (R.27).  Summary judgment briefing was completed on December 8, 2011.  JA-381 (R.31).

Eight months later, on August 7, 2012—three years after the EEOC originally filed this lawsuit—the district court granted Propak's motion for summary judgment and dismissed EEOC's lawsuit on the ground of laches.  JA-412-441 (R.41, R.42).  Before granting summary judgment, the district court

4

directed the court clerk to enter into the record nine documents the court had selected from the Commission's administrative file. JA-403-411 (R.32-R.40).

Propak moved for attorneys' fees on August 28, 2012. JA-447 (R.46). The EEOC filed and then dismissed an appeal from the district court's summary judgment decision. JA-552-554 (R.53, R.56). On March 26, 2013, the district court granted Propak's motion and awarded $189,113.50 in fees against the EEOC. JA-555-573 (R.57). This appeal followed. JA-574 (R.58).

### B. Statement of Facts

Propak Logistics is an Arkansas corporation that, in 2011, employed approximately 1,000 individuals providing warehousing and shipping logistical services in multiple locations, primarily for Wal-Mart stores around the country. JA-283 (R.27-1, Davis dep. at 7). Michael Quintois worked briefly for Propak as a supervisor at a Wal-Mart located in Shelby, North Carolina, from October 2002 until his discharge in December 2002. *See* JA-17 (R.4-2); JA-290-291 (R.27-1, Davis dep. at 37-38).

In January 2003, Quintois filed an EEOC charge alleging Propak fired him because of his national origin, American, and in retaliation for "complain[ing] to the company about its unlawful employment practices." JA-17 (R.4-2). Quintois's charge also stated, "During my employment I observed that the company was discharging non-Hispanic employees and that the company was hiring only

Hispanic employees." *Id.* The EEOC provided a copy of the charge to Propak, and by letter dated January 15, 2003, Propak's attorney informed EEOC that Propak was represented by counsel for purposes of the investigation. JA-82-83 (R.7-2, R.7-3).

Quintois's charge was one of over 80,000 charges filed with the EEOC during Fiscal year 2003 (October 1, 2002, through September 30, 2003). *See* www.eeoc.gov/eeoc/statistics/enforcement/charges.cfm (last visited August 20, 2013). During the EEOC's investigation, Propak requested several extensions of time, first for its position statement responding to Quintois's charge, and later for its responses to various requests to produce information, documents, and managers for an EEOC interview, adding approximately one year to the EEOC's investigation. *See* JA-85-86 (R.7-5); JA-257-262 (R.21-2 at 1-6); JA-344 (R.29-2).

EEOC requested, and Propak provided, information concerning its hiring practices at not only the Shelby location, where Quintois had been employed for two months, but at other Propak sites, as well. Propak provided over 10,000 documents concerning its hiring practices in these various locations, which the EEOC analyzed in light of statistical data the EEOC drew from the U.S. census and EEO-1 reports. JA-87-88 (R.7-5 at 3, R.7-6). In 2005, Propak's counsel met with the EEOC to discuss possible resolution of the allegations in the charge. Propak's counsel requested—and was granted—additional time to respond to the

EEOC's proposal for resolving the charge prior to a formal finding of discrimination. JA-259-260 (R.21-2 at 3-4). During this time, the EEOC discussed with Propak the statistical analyses on which the EEOC based its determination that Propak had a hiring short-fall of non-Hispanic job applicants. JA-87 (R.7-5 at 3); JA-260 (R.221-2 at 4).

On February 7, 2008, at Quintois's request, JA-406-407 (R.35-R.36), the EEOC issued Quintois a right-to-sue notice. JA-262 (R.21-2 at 6). The notice indicated the EEOC was continuing to process Quintois's charge.[2]

In March 2008, Quintois filed suit against Propak under Title VII. JA-346 (R.29-3). Quintois's complaint specifically plead that the EEOC had issued him a right-to-sue notice dated February 7, 2008, JA-347 (R.29-3, par. 6), and Propak expressly admitted this representation in its answer. *Quintois v. Propak*, Civ. No. 1:08-cv-98 (W.D.N.C.), docket entry #6, par. 6. Quintois and Propak filed a stipulation of voluntary dismissal in July 2008. *Quintois v. Propak*, docket entry #15 (stipulation of voluntary dismissal).[3]

---

[2] The February 7, 2008, right-to-sue notice was part of the administrative file excerpts the EEOC provided to the district court and to Propak at the court's direction. *See* JA-242-244 (R.21). The court did not include this item when it directed the clerk to file nine EEOC documents in the record, *see* JA-403-411 (R.32-R.40), but the EEOC has asked the district court to supplement the record on appeal with this document.

[3] The EEOC asks this Court to take judicial notice of Propak's Answer and the parties' stipulation of dismissal, which are official district court documents

The EEOC's Charlotte District Office conducted a "final determination counseling" with Propak's counsel on September 25, 2008, and then issued a letter of determination (LOD) on September 29, 2008. JA-263 (R.21-2 at 7). The LOD stated that the EEOC had "expanded the scope of the investigation [of Quintois's charge] to include an allegation that [Propak] failed to hire a class of non-Hispanic applicants for non-managerial positions because of their race and/or national origin, non-Hispanic" and that the evidence was sufficient to establish a class violation on this allegation. JA-89 (R.7-7). The LOD made no finding as to Quintois, noting the EEOC had previously issued Quintois a right-to-sue notice at his request. *Id.* The LOD invited Propak to engage in conciliation to resolve the allegation of discrimination. *Id.*

Propak declined to conciliate, asserting it could not "effectively participate in any conciliation because of the extreme delay in the Commission's issuance of its determination." *See* JA-356-358 (R.29-4, Propak letter dated October 10, 2008). Propak characterized the EEOC's investigation of the class hiring claim as "completely unrelated" to Quintois's charge and characterized the length of the EEOC investigation as "prejudicial," without elaboration. JA-356. Propak also asserted that many of the proposed conciliation steps were "impossible" because

---

available to this Court and the general public through PACER. *See* Fed. R. Evid. 201(b)(2) & (c)(2).

Propak had "closed all facilities in North and South Carolina" since the Commission began this investigation. JA-356-358.

The EEOC notified Propak that conciliation had ended and the case was being forwarded to the Legal Unit for possible litigation. JA-91 (R.7-8). From October 2008 to May 2009, the EEOC's Legal Unit reviewed the evidence and, between January and April 2009, contacted potential claimants. JA-92 (R.7-9 at ¶¶ 3-4); JA-263-264 (R.21-2 at 7-8). On June 5, 2009, EEOC Headquarters approved the lawsuit, and the Commission filed suit two months later. JA-92 (R.7-9 at ¶3); JA-8 (R.1). The EEOC's complaint alleged that from at least October 1, 2002, through June 30, 2004, Propak failed to hire a class of individuals for non-management jobs at a Wal-Mart distribution center in Shelby, North Carolina, because they were not Hispanic. JA-9 (R.1 at 2).

Propak moved to dismiss based, in part, on laches. JA-13-14 (R.4). Propak relied on an affidavit stating that the two site managers responsible for hiring decisions at the Shelby facility during the relevant period of time no longer worked for Propak. JA-20 (R.4-3, ¶¶ 5-8).[4] The affidavit further stated that Propak had closed the Shelby facility "no later than May 2008" and had not had any facilities in North Carolina since it closed the Shelby operations. *Id.* at ¶¶ 9-12. The EEOC

---

[4] The affidavit stated Kathy Ponder was site manager from October 2002 through early January 2004 and left Propak in July 2005. Jeremy Gay was site manager from February 2004 until he left Propak in February 2006. JA-20 (R.4-3, ¶¶ 5-8).

9

opposed Propak's motion, arguing Propak's representations demonstrated neither "unreasonable or unexplained delay" *nor* "undue prejudice," both of which are necessary for a laches defense.  JA-68-79 (R.7 at 3-14).

The district court adopted the magistrate's recommendation to deny Propak's motion to dismiss based on laches as premature.  *See* JA-127-142 (R.11); JA-228 (R.16 at 17).  The court thereafter granted the EEOC's request for limited discovery on the issue of prejudice and ordered the EEOC to provide the court with either a copy or a summary of the EEOC's administrative investigation.  JA-270-278 (R.23).  Following completion of discovery, Propak filed a motion for summary judgment asserting the same laches defense, JA-279-280 (R.27), which the district court granted.  JA-412-441 (R.41, R.42).

The district court held that the more than six years between the filing of the charge and the initiation of this litigation constituted unreasonable delay and Propak was materially prejudiced.  JA-428-440 (R.41 at 17-29).  The court examined the time that elapsed between each step in the Commission's investigation and rejected EEOC's position that the almost six-year duration "reflects the Commission's active investigation of the charge."  JA-428-432 (R.41 at 17-21).  The district court reasoned that Propak was prejudiced by the delay because Propak had ceased operations at the sites in question, had destroyed documents from those sites, and witnesses no longer worked for the company.  JA-

10

433-438 (R.41 at 22-27). The court also stated that the class of employees who purportedly experienced discrimination "last existed in 2004," and the court questioned whether aggrieved individuals could be identified at this point or whether their interests could be vindicated. JA-439 (R.41 at 28).

Following dismissal, Propak moved for attorneys' fees on the ground that "the EEOC's initiation of this litigation, and its conduct during the litigation, have been unreasonable." JA-447 (R.46). The EEOC opposed fees on the ground that the Commission had a sound legal basis for bringing the lawsuit and nothing in Propak's October 10, 2008, letter established the Commission should have known this lawsuit was barred by laches before it filed suit. JA-527, 531-533 (R.49 at 1, 5-7). The EEOC further argued it was reasonable for the Commission to seek discovery on the issue of prejudice because Propak's bare claim of "prejudice" in its October 10, 2008, letter offered no explanation or support for such a conclusion, and that nothing disclosed during discovery compelled a finding that the lawsuit was barred by laches. JA-533-534 (R.49 at 7-8).

## C. District Court's Decision on Attorneys' Fees

The district court awarded Propak attorneys' fees of $189,113.50. JA-555-573 (R.57). The court acknowledged that awarding fees to a prevailing defendant in a Title VII action "is a conservative tool, to be used sparingly." JA-560 (R.57 at 6) (quoting *EEOC v. Great Steaks, Inc.*, 667 F.3d 510, 517 (4th Cir. 2012)). The

court found the standard satisfied here, relying largely on its prior rulings that "EEOC's delay in the investigation of the charge was unreasonable" and "Propak was materially prejudiced thereby," rulings the court characterized as the "law of this case." *Id.*

The court found, first, that EEOC's claim was unreasonable when the EEOC initiated this lawsuit.   JA-560-565 (R.57 at 6-11).   The court examined the Commission's investigation and concluded the time between steps and the sequence of steps were unreasonable.  JA-560-563 (R.57 at 6-9).  The court noted that almost one year passed between referral of the case to EEOC's litigation unit and EEOC's filing of this lawsuit, by which time "Propak no longer conducted business at the facility at which the alleged discrimination occurred."  JA-563.  The court also stated that "[t]he purported class of individuals allegedly discriminated against had last existed in 2004" and speculated that it was uncertain those individuals could even be identified, asserting as a fact that "EEOC knew by November 2007 that it could not locate purported victims and witnesses."  JA-563-564 (R.57 at 9-10).  The court said:  "[E]ven if the initiation of the *investigation* itself was not unreasonable, by the time the EEOC determined to bring this action it was abundantly clear that a lawsuit would be moot and thus it was unreasonable to have filed it."  JA-564-565 (R.57 at 10-11).

The court also found it unreasonable that the EEOC continued litigating the case. The court stated the EEOC had "conceded that there had been an extraordinary delay" but "nonetheless insisted on conducting discovery on the issue of whether Propak had been prejudiced by that delay," even though EEOC's "own efforts in November 2007 to locate victims and witnesses had been unsuccessful" and the discovery, once undertaken, "reaffirmed that purported victims and witnesses could not be located, the facilities were closed and the records related thereto were no longer in existence." JA-565 (R.57 at 11). The court stated that an award of attorneys' fees is warranted "where the defects in the suit are of such magnitude that the plaintiff's ultimate failure is clearly apparent . . . at some significant point in the proceedings, [yet] the plaintiff continues to litigate." JA-565-566 (R.57 at 11-12) (citation omitted).

Finally, the court stated the EEOC's fee opposition omitted any "affirmative assertion that the action was reasonably brought and pursued." JA-566. The court asserted that EEOC relied, instead, on a contention that EEOC's conduct "did not materially prejudice Propak and thus did not rise to the level of laches." *Id.* The court rejected this argument, stating that "inherent in" its prior ruling on laches "is a determination that the EEOC's conduct materially prejudiced Propak." *Id.*

13

## STANDARD OF REVIEW

Title VII permits a district court, "in its discretion," to allow a prevailing party a reasonable attorney's fee. *See* 42 U.S.C. § 2000e-5(k)). In *Christiansburg Garment Company v. EEOC*, 434 U.S. 412 (1978), however, the Supreme Court held that although a court should ordinarily award attorneys' fees to a prevailing *plaintiff*, a court may award attorneys' fees to a prevailing *defendant* only when the plaintiff's claim was frivolous, unreasonable, or without foundation. *Id.* at 420-23.

This Court reviews for abuse of discretion a district court's application of the *Christiansburg* standard to grant or deny attorneys' fees to a prevailing defendant. *See EEOC v. Great Steaks, Inc.*, 667 F.3d 510, 516 (4th Cir. 2012) (reviewing court's denial of attorneys' fees under Title VII for abuse of discretion); *EEOC v. Central Wholesalers, Inc.*, 573 F.3d 167, 178 (4th Cir. 2009) (same). "By definition, a court 'abuses its discretion when it makes an error of law.'" *EEOC v. Navy Fed. Credit Union*, 424 F.3d 397, 405 (4th Cir. 2005) (reversing district court's imposition of laches against EEOC) (citation omitted). *See also Priestley v. Astrue*, 651 F.3d 410, 415-16 (4th Cir. 2011) (district court abused its discretion if it "applied 'mistaken legal principles' or made 'clearly erroneous factual findings'") (citations omitted); *Westberry v. Gislaved Gummi AB*, 178 F.3d 257, 261 (4th Cir. 1999) (court abuses its discretion "if its conclusion is guided by erroneous legal principles . . . or rests upon a clearly erroneous factual finding.").

14

# SUMMARY OF ARGUMENT

The district court erred as a matter of law and abused its discretion when it imposed attorneys' fees on the EEOC after dismissing the EEOC's lawsuit based on laches. Under *Christiansburg Garment Co. v. EEOC*, 434 U.S. 412 (1978), a court may award fees to a prevailing defendant only if the plaintiff's suit was "frivolous, unreasonable, or without foundation." In this case, Propak argued that EEOC's lawsuit was unreasonable because it was barred by laches. JA-517-525 (R.46-2). Laches, however, does not apply to the sovereign where, as here, the sovereign sues to enforce the public interest. Therefore, it was not unreasonable for the EEOC to oppose Propak's assertion of laches, and the district court erred as a matter of law when it imposed attorneys' fees on that basis.

Even assuming *arguendo* that laches can apply to EEOC lawsuits and can support dismissal of an EEOC lawsuit in appropriate circumstances, the district court abused its discretion in imposing attorneys' fees here because the EEOC had a reasonable basis for filing and continuing to litigate this action. A party asserting the affirmative defense of laches bears the burden of proving *both* unreasonable delay in filing the lawsuit *and* material prejudice caused by that delay. Before the EEOC filed this lawsuit, Propak provided no information to support its bare claim of "prejudicial delay," and the EEOC reasonably believed the Commission could justify the time it took to file suit. Once Propak raised this defense, the EEOC

reasonably sought discovery on the issue of "prejudice" because Propak still had not disclosed any facts that would compel a finding of prejudice. The facts disclosed in discovery further provided a reasonable basis for the EEOC to believe that any prejudice was caused by Propak's own conduct. Thus, the EEOC reasonably believed its lawsuit was not barred by laches, and the court abused its discretion in awarding fees on the ground that the EEOC acted unreasonably in filing and litigating this case.

The district court also erred as a matter of law in including the EEOC's investigation in its consideration of "unreasonable delay." The doctrine of "laches" applies only when a party has delayed unreasonably in acting on its rights, and the EEOC has no right to initiate a lawsuit until it has completed its administrative process. The court further erred as a matter of law when it mischaracterized its prior ruling on laches as "the law of the case" for Propak's fee application. Under *Christiansburg*, a prevailing defendant is not entitled to fees as a matter of course; a court must determine whether the position the losing plaintiff asserted was unreasonable. In addressing Propak's fee application, the district court was required to consider not whether laches ultimately barred this lawsuit, but whether the EEOC was wholly unreasonable in its effort to oppose Propak's assertion of a laches defense. The district court committed legal error when it reasoned that its original findings of "unreasonable delay" and "prejudice" were

dispositive of the finding of "frivolous, unreasonable, or without foundation" necessary to support an award of fees to a prevailing defendant under Title VII. The resulting fee award, therefore, constitutes an abuse of the district court's discretion.

## ARGUMENT

**The District Court Erred in Awarding Fees Against the EEOC because Laches does not Apply Against the Government and because the EEOC, in Any Event, Reasonably Believed Propak had Failed to Demonstrate a Successful Laches Defense**.

Title VII allows a district court, in its discretion, to award attorneys' fees to a prevailing party. 42 U.S.C. 2000e-5(k).[5] Although the statute does not distinguish between prevailing plaintiffs and prevailing defendants, the Supreme Court has ruled that a prevailing plaintiff, other than the Commission, is entitled to fees as a matter of course, but a prevailing defendant is entitled to fees only when the plaintiff's claim was frivolous, unreasonable, or without foundation. *Christiansburg Garment Co. v. EEOC*, 434 U.S. at 420-23. The Supreme Court directed district courts, in applying this standard, to "resist the understandable

---

[5]  42 U.S.C. 2000e-5(k) provides, in full:  "In any action or proceeding under this subchapter the court, in its discretion, may allow the prevailing party, other than the Commission or the United States, a reasonable attorney's fee (including expert fees) as part of the costs, and the Commission and the United States shall be liable for costs the same as a private person."

temptation to engage in *post hoc* reasoning by concluding that, because a plaintiff did not ultimately prevail, his action must have been unreasonable or without foundation."   The Court explained that this type of "hindsight logic could discourage all but the most airtight claims," a result that would undermine Congress's desire for "vigorous enforcement of the provisions of Title VII."  *Id.* at 421-22.

Consistent with this standard, this Court has stated that "awarding attorneys' fees to a prevailing defendant is a conservative tool, to be used sparingly in those cases [in] which the plaintiff presses a claim which [it] knew or should have known was groundless, frivolous, or unreasonable [or that had become so.]"  *Great Steaks*, 667 F.3d at 517 (internal quotation and citation omitted).  Furthermore, recognizing "the chilling effect" the imposition of fees can have on Title VII plaintiffs, this Court has expressly reiterated the Supreme Court's directive that district courts not use "*post hoc* reasoning" to award fees against a losing plaintiff "based upon the outcome of the lawsuit."   *Glymph v. Spartanburg Gen. Hosp.*, 783 F.2d 476, 479 (4th Cir. 1986).

In seeking fees here, Propak argued that it was unreasonable for the EEOC not to have recognized, before it filed this lawsuit, that this action was barred by laches, and that the EEOC continued to act unreasonably when it opposed Propak's assertion of a laches defense.  The district court agreed with Propak that EEOC's

lawsuit was barred by laches. Because fees are not awarded routinely to a prevailing defendant, however, the critical question here is not whether the district court correctly granted summary judgment based on laches, but whether the EEOC had a reasonable basis for believing that laches did not bar this litigation when EEOC (1) filed this lawsuit, (2) sought discovery on the element of "prejudice," and (3) continued opposing dismissal after discovery was completed. As in *Great Steaks,* where this Court upheld the district court's refusal to award fees against the Commission because "[t]he EEOC's case had a factual and legal basis from start to finish," 667 F.3d at 519, the EEOC here "had a factual and legal basis from start to finish" for concluding that laches did not bar the Commission from filing this lawsuit and continuing to oppose Propak's laches defense.

Laches is an affirmative defense that requires a defendant to prove two things: "lack of diligence by the party against whom the defense is asserted," and "prejudice to the party asserting the defense" resulting from that lack of diligence. *EEOC v. Navy Fed. Credit Union*, 424 F.3d at 409 (quoting *White v. Daniel*, 909 F.2d 99, 102 (4th Cir. 1990)). The first element is satisfied where a plaintiff, despite having a claim of which it knew or should have known, "delayed inexcusably or unreasonably in filing suit," *White*, 909 F.2d at 102, or where such delay is "unexplained." *EEOC v. Martin Processing, Inc.*, 533 F. Supp. 227, 229 (W.D. Va. 1982).

19

No specific time constitutes *per se* unreasonable delay. *EEOC v. Worthington, Moore & Jacobs, Inc.*, 582 F. Supp. 2d 731, 735 (D. Md. 2008). Furthermore, as this Court recently observed in explaining "unreasonable delay" in the context of a trademark infringement claim: "Logic dictates that 'unreasonable delay' does not include any period of time *before* the [plaintiff] is able to pursue a claim . . . otherwise, a [plaintiff] could be punished for not bringing a claim he had no right to bring." *Ray Commc'ns, Inc. v. Clear Channel Commc'ns, Inc.*, 673 F.3d 294, 301 (4th Cir. 2012) (emphasis added; citations omitted).

"Mere delay . . . is not sufficient to constitute a defense of laches; a defendant must also show prejudice." *EEOC v. Radiator Specialty Co.*, 610 F.2d 178, 183 (4th Cir. 1979) (citations omitted). In this regard, a "generalized allegation of harm from the passage of time does not amount to a showing of prejudice," *id.*; the prejudice "must arise from and be assessed with respect to the facts of each individual claim," *EEOC v. Chesapeake & Ohio Ry. Co.*, 577 F.2d 229, 234 (4th Cir. 1978) ("finding of prejudice . . . cannot rest on a defendant's 'generalized assertions.'").

 "Evidentiary prejudice encompasses such things as lost, stale or degraded evidence or witnesses whose memories have faded or who have died." *Ray Commc'ns*, 673 F.3d at 305. The defendant must establish that the "disadvantage on the part of the defendant in asserting or establishing a claimed right or some

20

other harm [was] caused by detrimental reliance on the plaintiff's conduct." *See White*, 909 F.2d at 102 (citation omitted). Courts addressing laches in an EEOC lawsuit "have required 'substantial,' 'material' or 'serious' prejudice, . . . caused by the Commission's delay rather than by the defendant's negligence." *EEOC v. Massey-Ferguson, Inc.*, 622 F.2d 271, 278 (7th Cir. 1980) (citing *Fowler v. Blue Bell, Inc.*, 596 F.2d 1276, 1279-80 (5th Cir. 1979)); *see Martin Processing*, 533 F. Supp. at 230 (defendant asserting laches defense must "demonstrate prejudice to its defense *stemming from the unreasonable delay*") (emphasis added). Because it is an affirmative defense, if a defendant in an EEOC lawsuit "seeks summary judgment on that basis, 'it must conclusively establish all essential elements of [the] defense.'" *EEOC v. PBM Graphics, Inc.*, 877 F. Supp. 2d 334, 363-64 (M.D.N.C. 2012) (citing *Ray Commc'ns*, 673 F.3d at 299).

Finally, this Court and others have cautioned that laches should be applied sparingly, if at all, when the plaintiff's claim protects or advances the public interest. *See, e.g.*, *Lyons P'ship v. Morris Costumes, Inc.*, 243 F.3d 789, 799 (4th Cir. 2001) (copyright claim); *Sara Lee Corp. v. Kayser-Roth Corp.*, 81 F.3d 455, 461 (4th Cir. 1996) (trademark infringement action); *see also Grand Canyon Trust v. Tucson Elec. Power Co.*, 391 F.3d 979, 987 (9th Cir. 2004) (Clean Air Act lawsuit). This Court has noted that when Congress gave the EEOC authority to enforce Title VII in court, "Congress had come to recognize discrimination in

employment as a 'societal' wrong, calling primarily for public enforcement."
*EEOC v. Gen. Elec. Co.*, 532 F.2d 359, 372-73 (4th Cir. 1976).

## A. The district court erred as a matter of law in awarding fees against the EEOC because laches cannot be applied to suits by an agency of the federal government to enforce the public interest.

The Supreme Court has never held that laches can bar an EEOC lawsuit outright, and the Commission submits that it cannot. Generally, "laches is not a defense against the sovereign." *Costello v. United States*, 365 U.S. 265, 281 (1961). Although there are some exceptions to this rule, as, for instance, where the government seeks only a private remedy on behalf of a private individual, "laches is not available against the federal government when it undertakes to enforce a public right or protect the public interest." *United States v. Angell*, 292 F.3d 333, 338 (2d Cir. 2002) (citations omitted). And although courts within this circuit have entertained laches defenses in EEOC lawsuits, apparently assuming it is proper to do so, we have found no case where this Court directly addressed the argument that an enforcement action by the EEOC—an arm of the federal government—cannot be dismissed based on laches.[6]

---

[6] The district court in *EEOC v. Lockheed Martin Global Telecommunications, Inc.*, 514 F. Supp. 2d 797, 801 n.7 (D. Md. 2007), stated it did not find this argument persuasive, but held the defendant failed to establish a laches defense. We have found only one case in this circuit that resulted in dismissal of an EEOC lawsuit based on laches: *EEOC v. Martin Processing, Inc.*, 533 F. Supp. 227 (W.D. Va. 1982). In *EEOC v. Peterson, Howell & Heather, Inc.*, 702 F. Supp. 1213, 1224 (D. Md. 1989), the district court barred the EEOC from seeking

Courts that have entertained a laches defense against the EEOC typically rely on *Occidental Life Insurance Co. v. EEOC*, 432 U.S. 355 (1977). *See, e.g.*, *EEOC v. Peterson, Howell & Heather, Inc.*, 702 F. Supp. 1213, 1220 (D. Md. 1989). *Occidental Life*, however, addressed an entirely different question—whether any statute of limitations applies to the filing of an EEOC lawsuit under Title VII (ruling it does not). 432 U.S. at 360-72. The Court in *Occidental Life* explained why—despite the absence of a statute of limitations—defendant employers are not without a remedy if there is an inordinate delay in an EEOC lawsuit. The Court stated that during an EEOC investigation, a respondent employer is on notice that further action might ensue. The respondent, therefore, can (and is expected to) take steps to preserve the evidence needed to defend its conduct. *Id.* at 372-73. Thereafter, if there is "inordinate EEOC delay in filing the action after exhausting its conciliation efforts," a court has power to provide appropriate relief to a defendant by, for instance, limiting backpay relief. *Id.* at 373. Notably, however, the Supreme Court did not suggest that a court could

---

backpay based on laches but allowed the case to proceed on injunctive relief. The other cases in this circuit where a district court dismissed an EEOC lawsuit based on laches were subsequently reversed by this Court. *See, e.g.*, *EEOC v. Navy Fed. Credit Union*, 424 F.3d at 409-11; *EEOC v. Am. Nat'l Bank*, 574 F.2d 1173 (4th Cir. 1978).

address "inordinate EEOC delay" by dismissing an EEOC lawsuit, stating only that a court could consider limiting the backpay relief available to the EEOC.[7] *Id.*

Since *Occidental Life*, some courts have expressed doubt as to whether a laches defense can properly bar an EEOC lawsuit. In *EEOC v. Great Atlantic & Pacific Tea Company,* the Third Circuit stated that "[b]ecause the plaintiff is a governmental agency, . . . it is at least problematical, absent federal statutory authority, whether laches is ever a defense against the sovereign." 735 F.2d 69, 80 (3d Cir. 1984) (citing *Costello*, 365 U.S. at 281; other citations omitted). As the

---

[7] Two justices in *Occidental Life* questioned whether EEOC lawsuits are the type of government suits which are immune from a laches defense. Those justices stated that, because the EEOC seeks "to recover backpay for an individual that could have brought her own suit, it is impossible to think that the EEOC was suing in the sovereign capacity of the United States." *See Occidental Life*, 432 U.S. at 383 (Rehnquist, J., dissenting in part and joined by Burger). As the Third Circuit observed in *EEOC v. Great Atlantic & Pacific Tea Company*, however, "[t]he rule that laches does not apply to the federal sovereign has been applied even when the United States sues on behalf of others." 735 F.2d 69, 80 (3d Cir. 1984) (citations omitted). Furthermore, the Supreme Court has long made clear that when the EEOC files suit, it does not simply stand in the shoes of aggrieved individuals, seeking relief on their behalf. Rather, EEOC lawsuits seek to further the public interest, even when the EEOC seeks monetary relief for specific employees and applicants. *See, e.g.*, *EEOC v. Waffle House, Inc.*, 534 U.S. 279, 296-98 (2002) (EEOC lawsuit not merely derivative of employee's claim; EEOC sues on behalf of the public interest, even when seeking relief for individual employees); *Gen. Tel. Co. of NW v. EEOC*, 446 U.S. 318, 325-26 (1980) (when Congress gave EEOC litigation authority in 1972, "Congress sought to implement the public interest as well as to bring about more effective enforcement of private rights"; consequently, "EEOC is not merely a proxy for the victims of discrimination"); *EEOC v. Gen. Elec. Co.*, 532 F.2d at 372-73 (noting that Congress recognized employment discrimination as "a 'societal' wrong" when it gave EEOC authority to sue; further noting that EEOC sues "to vindicate the public interest").

Third Circuit explained, the Supreme Court's reference in *Occidental Life* to "the district court's power to afford protection from prejudice arising from delays in prosecution may well speak only to the discretion which [Title VII] affords respecting the imposition of back pay liability rather than other forms of prospective equitable relief." *Id.  See also EEOC v. Mitsubishi Motor Mfg. of Am., Inc.*, 990 F. Supp. 1059, 1088-90 (C.D. Ill. 1998) (questioning whether laches defense is available as a complete bar to an action filed by EEOC to enforce Title VII, citing *Great Atl. & Pac. Tea*).

The Supreme Court has since confirmed that it has not yet decided the question.  In *National Railroad Passenger Corporation v. Morgan*, 536 U.S. 101 (2002), the Court acknowledged that if a defendant in a private Title VII action is prejudiced by a private plaintiff's unreasonable delay in filing suit, it "may raise a laches defense."  *Id.* at 121.  The Court noted, however, that "traditionally the doctrine may not be applied against the sovereign" and expressly declined to decide "whether the laches defense may be asserted against the EEOC."  *Id.* at 122 & n.14 (citations omitted).  The Court stated only that there was apparently a general agreement in *Occidental Life* "that courts can provide relief to defendants against inordinate delay by the EEOC."  *Id.* at 122 n.14.

The Third Circuit in *Great Atlantic & Pacific Tea* and the district court in *Mitsubishi* found it unnecessary to decide this legal question because the

defendants in both cases failed to establish either element of a laches defense. *Great Atl. & Pac. Tea*, 735 F.2d at 81-85; *Mitsubishi*, 990 F. Supp. at 1088-90; *see also EEOC v. Watkins Motor Lines, Inc.*, 463 F.3d 436, 439-40 & n.1 (6th Cir. 2006) (declining to address EEOC's argument that laches defense is not applicable to a government entity such as EEOC because "Watkins has not met its burden in establishing a prejudicial delay").  Nevertheless, as these courts and the Supreme Court in *Morgan* pointed out, there remains a serious question whether laches can properly be applied to bar an EEOC lawsuit, as opposed to providing a court with the authority to limit or mold relief if the EEOC prevails on the merits of its claim but the defendant demonstrates it was prejudiced by EEOC's unreasonable delay.

This Court's discussion in *EEOC v. American National Bank*, 574 F.2d 1173 (4th Cir. 1978), suggests concurrence with this interpretation of *Occidental Life*. In reversing a district court's dismissal of an EEOC lawsuit based on laches, this Court observed that a district court is authorized, *after a full development of the facts*, to limit or deny backpay when a defendant experiences prejudice from EEOC delay.  This Court made no mention of any judicial authority to dismiss the EEOC's lawsuit entirely.  *See id.* at 1175-76.  *See also EEOC v. Chesapeake & Ohio Ry. Co.*, 577 F.2d at 233 (citing *Am. Nat'l Bank*, 574 F.2d at 1176).

If, as the EEOC submits, the defense of laches is not properly available in EEOC enforcement actions as a basis to dismiss a Commission lawsuit, then

assuredly it would be a miscarriage of justice to permit an award of attorneys' fees against the Commission because of such an improper dismissal.  This issue was not argued below and, for prudential reasons, the Commission dismissed its appeal from the district court's laches dismissal.  JA-552-554 (R.53, R.56).  Nevertheless, this issue presents a strictly legal question that this Court may, if it chooses, address in this appeal.  *See Nat'l Wildlife Fed'n v. Hanson*, 859 F.2d 313, 318 (4th Cir. 1988) (noting that, to avoid a miscarriage of justice, Court may consider an issue raised for first time on appeal; considering government's argument concerning manner of calculating fee award against it, despite government's failure to raise the argument below).

Although this Court certainly can address this argument and reverse the imposition of fees on this basis, there are other grounds on which this Court can and should reverse the award of fees here.  Assuming, *arguendo*, that laches applies to the EEOC and authorizes dismissal in appropriate situations, the district court erred in awarding attorneys' fees here because the Commission at all times reasonably believed Propak had not established either element of a laches defense. Specifically, the Commission had a reasonable basis for believing, first, that the prejudice Propak attributed to the EEOC's actions was actually caused by Propak's own conduct and, second, that the Commission's explanation for the length of time it took the EEOC to file this lawsuit was sufficient to defeat Propak's assertion of

"unreasonable delay." The Commission's position on these two issues was not frivolous or unreasonable as a matter of law. Therefore, the district court abused its discretion in imposing attorneys' fees.

**B. Before and after filing suit, the EEOC reasonably believed Propak had not established the "prejudice" element of a laches defense**.

"Prejudice" is an essential element of a laches affirmative defense. *See EEOC v. Radiator Specialty Co.*, 610 F.2d at 183 (mere delay not sufficient to establish laches; "a defendant must also show prejudice."). Because the EEOC at all times had a reasonable basis for believing Propak had not demonstrated the type of "prejudice" necessary to sustain a laches defense, the district court abused its discretion by imposing fees on the EEOC on the ground that EEOC acted unreasonably by filing and then continuing to litigate this case.

1. Laches is an affirmative defense that a defendant might, or might not, assert. Therefore, a plaintiff would not be expected to forego filing a lawsuit based on laches absent clear indication that both elements of a laches defense were met. Before the EEOC filed this lawsuit, Propak failed to communicate to the EEOC any information that would have demonstrated Propak was prejudiced by any delay in the filing of the EEOC's lawsuit, and the EEOC was aware of no such information.

Propak's October 2008 letter rejecting the EEOC's invitation to conciliate vaguely alleged "prejudice" based on the amount of time that had passed since the

charge had been filed. *See supra* at 8. As explained *infra*, however, the time the EEOC spent investigating the charge is not properly included in the assessment of whether a defendant experienced prejudice from the EEOC's delay. To the contrary, when a district court is assessing whether any delay was so excessive and prejudicial that the court should consider fashioning some relief, the proper timeframe under *Occidental Life* is from the failure of conciliation to the EEOC's filing of the complaint in district court. *See* Point C, *infra* at 43-49.

Even assuming a court may properly include the time the EEOC spent investigating a charge in assessing whether an unreasonable delay in filing suit caused the defendant prejudice, Propak failed to offer any basis for its bald claim of "prejudice" in its October 2008 letter. *See* JA-356-358 (R.29-4). Propak's letter failed to disclose any facts to support its bare claim of "prejudicial delay," and the EEOC knew of no such factual basis. As this Court has noted, the mere passage of time is not enough to support the "prejudice" element of a laches defense. Rather, a defendant asserting the affirmative defense of laches must demonstrate specific, actual harm resulting from EEOC delay. *See, e.g.*, *Radiator Specialty*, 610 F.2d at 183; *EEOC v. S. Car. Nat'l Bank*, 562 F.2d 329, 332 (4th Cir. 1977); *Am. Nat'l Bank*, 574 F.2d at 1175-76. Given this precedent, the Commission reasonably concluded that Propak's unsupported claim of "prejudice" in its October 2008

letter failed to satisfy Propak's burden of proof on the "prejudice" component of an affirmative defense of laches.

Propak's statement, in the same letter, that it had closed all its facilities in North and South Carolina likewise would not require the Commission to conclude that Propak had established the "prejudice" element of a laches defense. As the EEOC argued below, JA-534 (R.49 at 8), the Commission is entitled to continue an enforcement action against a company even after it has closed part or even all of its operations. *See, e.g.*, *EEOC v. Konica Minolta Bus. Solutions*, 639 F.3d 366 (7th Cir. 2011) (enforcing EEOC subpoena notwithstanding facility had closed since charge was filed); *EEOC v. Lucky Stores, Inc.*, 1982 WL 232 (E.D. Cal. April 1, 1982) (allowing EEOC lawsuit to proceed even though company closed two facilities and transferred some of its staff to a third facility); *see also Great Atl. & Pac. Tea Co.*, 735 F.2d at 79-85 (reversing dismissal based on laches and rejecting defendant's claim of prejudice based, in part, on corporate restructuring and closing of the offices where the discrimination occurred).

Propak offered no other basis for alleging prejudice, and the EEOC knew of no other grounds when the Commission filed this lawsuit in August 2009. Thus, when the EEOC initiated this litigation, it was not unreasonable for the EEOC to believe that laches did not bar this lawsuit.

2.     After the EEOC filed suit, Propak moved to dismiss the complaint based on laches.  *See* JA-13 (R.4).  The Commission reasonably believed that the minimal facts Propak advanced in this motion failed to establish the prejudice component of a laches defense.

Propak relied on the discrimination charge filed by Quintois and the affidavit of Corporate Human Resources Manager Leah Hamilton.  JA-15-21 (R.4-2, R.4-3). Hamilton asserted that Propak no longer employed the two site managers responsible for the relevant hiring at the Shelby facility and that, by May 2008, Propak had closed the Shelby site and no longer had any facilities in North Carolina.  JA-20 (R.4-3 at 3).  Hamilton's affidavit said nothing about any efforts by Propak to locate the two managers or any other witnesses, nor did it mention the status of any relevant documents.  *See* JA-19-21 (R.4-3 at 2-4).

Propak's evidence did not demonstrate the type of "prejudice" that might support a laches defense.  Propak argued that it faced the "hardship of locating these former employees (and any other witnesses from the former Shelby, North Carolina plant . . . )" and that even if Propak could locate these witnesses, "it is clear that the mere passage of time fades memories."  JA-28 (R.5 at 7).  Courts have held, however, that such vague contentions do not establish "prejudice" with respect to a laches defense.  *See Radiator Specialty*, 610 F.2d at 183 ("A generalized allegation of harm from the passage of time does not amount to a

showing of prejudice."). Rather, a defendant must show it attempted to locate witnesses before it can claim prejudice based on their unavailability. *See, e.g.*, *Cleveland Newspaper Guild, Local 1 v. Plain Dealer Pub. Co.*, 839 F.2d 1147, 1161 (6th Cir. 1988) (fact that individuals are no longer employed by defendant insufficient to establish prejudice where defendant made no showing these witnesses were unavailable); *Great Atl. & Pac. Tea*, 735 F.2d at 84-85; *Fowler v. Blue Bell, Inc.*, 596 F.2d at 1279. Courts have likewise held that a defendant must demonstrate that witnesses actually cannot remember information that would be relevant to its defense; a defendant is not permitted to demonstrate "prejudice" for a laches defense by merely speculating what the witnesses might not recall. *See, e.g.*, *EEOC v. Philips Colleges, Inc.*, 984 F. Supp. 1464, 1470 (M.D. Fla. 1997) (rejecting generalized assertions of prejudice based on diminished witness memories).

Propak also argued that the delay "increased [Propak's] potential back pay liability significantly." JA-29 (R.5 at 8). But, as the Supreme Court noted in *Occidental Life*, a court can readily remedy any employer prejudice in the form of increased backpay liability by limiting backpay relief, if the EEOC establishes liability. *Occidental Life*, 432 U.S. at 373; *see also EEOC v. Worthington, Moore & Jacobs, Inc.*, 582 F. Supp. 2d at 737 (declining to dismiss EEOC lawsuit based on laches; reasoning that if, at trial, the facts reveal that defendant's ability to

32

present its defense was prejudiced by EEOC's delay in filing suit, "[c]ourt can take this into consideration when crafting an appropriate damage award").

The EEOC's belief that Propak's bare allegations in its motion to dismiss did not establish the "prejudice" component of a laches defense as a matter of law is supported by legal precedent and was, therefore, reasonable. As the EEOC pointed out below, both in its opposition to laches and, again, in its opposition to fees, the fact that witnesses are no longer employed by the defendant does not mean those persons are unavailable, and the fact that time has passed does not mean their memories have necessarily faded. JA-77-79, 337-339, 536-537 (R.7 at 12-14; R.29 at 22-24; R.49 at 10-11) (citing, among other cases, *EEOC v. Lockheed Martin Global Telecomms., Inc.*, 514 F. Supp. 2d 797, 804 (D. Md. 2007), and *Great Atl. & Pac. Tea Co.*, 735 F.2d at 84). Furthermore, any claim that backpay was unfairly enlarged by the passage of time was premature and properly resolved after the facts were developed and liability established. JA-79 (R.7 at 14).

The magistrate agreed that the evidence Propak proffered in its motion to dismiss was insufficient to support its laches defense. *See* JA-137-138 (R.11 at 11-12) (magistrate recommendation to deny Propak's motion because facts not yet developed). The district court, in adopting the magistrate's recommendation and denying Propak's motion without prejudice, invited the parties to indicate whether

discovery was needed.  JA-227-229 (R.16 at 16-18).  In this same order, the district court invited Propak to move for summary judgment based on laches and, if it chose, to support that motion by additional evidence.  JA-227.

Propak responded by expressly stating it intended to move for summary judgment on laches and to rely on additional evidence.  JA-232-233 (R.18).  Given this response, the EEOC reasonably sought limited discovery on the issue of prejudice.  JA-236-240 (R.20).  The reasonableness of the EEOC's request is further evidenced by the fact that the district court, in granting the request, stated that limited discovery was "*necessary* solely on the issue of whether the Defendant has sustained prejudice as a result of the delay" in EEOC's investigation.  JA-276-277 (R.23 at 7-8; emphasis added).

The district court's grant of limited discovery here was not only permissible, it was virtually compelled by this Court's precedent.  In *American National Bank*, this Court stated:  "Whether the commission's delays caused prejudice that will justify a limitation of the relief which the district court should decree can best be considered *after the facts have been fully developed*, if the commission ultimately prevails."  *Am. Nat'l Bank*, 574 F.2d at 1176 (emphasis added).  This Court has since reiterated that "*until all the facts have been developed*, a district court should not decide whether the commission's delays have caused prejudice to the employer

justifying a limitation of relief." *Chesapeake & Ohio Ry.*, 577 F.2d at 233 (citing *Am. Nat'l Bank*, *supra*) (emphasis added).

As recently as 2008, district courts in this circuit have recognized this directive that courts should wait until all the facts are developed before deciding whether to limit the relief available in an EEOC lawsuit based on a defendant's claim of prejudice due to EEOC delay. *See, e.g.*, *Worthington, Moore & Jacobs*, 582 F. Supp. 2d at 737. Given the district court's concurrence here with the magistrate's recommendation that more facts were needed, the EEOC's request for discovery on the issue of "prejudice" was more than reasonable. To the extent the district court based its imposition of fees on the rationale that EEOC acted unreasonably by requesting discovery on Propak's claim of "prejudice," JA-565 (R.57 at 11), the court erred as a matter of law and abused its discretion.

3.     After completing discovery, the EEOC continued to act reasonably in opposing Propak's motion for summary judgment, because the facts uncovered during discovery permitted the reasonable conclusion that the prejudice Propak claimed either did not exist or was caused by Propak's own conduct.

Propak's motion for summary judgment claimed four ways that it was allegedly prejudiced by EEOC's delay in filing this lawsuit:   (1) anticipated difficulty locating the two hiring managers who no longer worked for Propak and other former employees from the now-closed Shelby facility; (2) the assumption

that witnesses memories were lost or faded; (3) absence of records Propak claimed it needed for its defense, because Propak had destroyed the records at some unknown point (although company officials could not say which records were missing, when they had been destroyed, or how they would have affected Propak's defense); and (4) the increase of any potential backpay liability each day suit was delayed. JA-305-306 (R.28 at 12-13). Propak further argued that after Quintois's lawsuit was filed and dismissed, "it was believed that the entire matter was over." JA-307 (R.28 at 14).

Based on the facts uncovered during discovery, EEOC reasonably concluded that none of these arguments established prejudice as a matter of law. During discovery, Leah Hamilton, on whose affidavit Propak relied when it initially moved to dismiss this lawsuit based on laches, attested that no one from Propak ever asked her to try to locate the two former managers who made the hiring decisions at the Shelby location between 2002 and 2004, and she never attempted to do so on her own. JA-377-379 (R.29-6, Hamilton Dep. 10:13-12:6). Propak's Rule 30(b)(6) witness, Donna Davis, admitted Propak never took any steps to try to locate these two former managers. JA-367-368, 370 (R.29-5, Davis Dep. 31:25-32:25, 41:17-20). Davis candidly explained "it would serve no purpose" to try to locate former employees because "they would have no dedication to Propak." JA-368 (Davis Dep. 32:9-14). Davis also explained that "back in 2003" Propak

"pulled all of the records related to this Charge of Discrimination," but admitted that Propak, at some unknown point, destroyed those records.  JA-365-366, 371-372 (Davis Dep. 26:8-27:11, 42:10-43:2).

As discussed above, courts considering a laches defense have rejected a defendant's claim of prejudice based on the theoretical difficulty of locating managers who no longer work for the company or on the assumption that witnesses' memories have inevitably faded concerning matters that relate directly to the company's defense.  *See, e.g.*, *EEOC v. Lockheed Martin*, 514 F. Supp. 2d at 803-05; *see also Great Atl. & Pac. Tea Co.*, 735 F.2d at 84 ("The fact that many former store managers have been dismissed because of a contraction of A&P's business does not establish their unavailability.") (*dicta*).  Even when there is a claim of prejudice based on the death of a management witness, courts have ruled that the EEOC may proceed with its lawsuit subject to evidentiary adjustments during the trial to permit the company to compensate for the loss of its witness. *See, e.g.*, *EEOC v. Worthington, Moore & Jacobs, Inc.*, 582 F. Supp. 2d at 737 ("any finding of prejudice that WMJ suffered as a result of EEOC's delay is a matter best reserved for resolution at trial. . . . [T]he Court can take [any prejudice revealed at trial] into consideration when crafting an appropriate damage

award.").[8]  Likewise, courts have rejected a defendant's claim of prejudice based on the contention that witness memories have inevitably faded over matters relevant to the defendant's defense, absent specific evidence that the witnesses themselves claimed any such memory loss and that the lost memories would have been important to the defendant's defense.  *See, e.g.*, *Phillips Colleges*, 984 F. Supp. at 1470.

Courts have also rejected claims of prejudice based on a defendant's assertion that it no longer has relevant records because it destroyed them during the EEOC's investigation.  As the Supreme Court explained in *Occidental Life* and as courts have reiterated since, once an employer receives notice from the EEOC that a discrimination charge has been filed against it, the employer is aware that it must take steps to preserve relevant documents and other evidence.  *See, e.g.*, *Occidental Life*, 432 U.S. at 372-73; *Lockheed Martin*, 514 F. Supp. 2d at 805 & n.15 (once defendant received notice of the EEOC charge, it "had a duty to 'preserve all personnel records relevant to the charge or action until final disposition of the charge or the action'") (citing 29 C.F.R. § 1602.14); *see also Watkins Motor Lines*, 463 F.3d at 440 (rejecting claim of prejudice where lost computer data was

---

[8]  *See also Fowler v. Blue Bell, Inc.*, where the Eleventh Circuit rejected the defendant's claim of prejudice based on the fact that several former plant and personnel managers were no longer employed by the company.  The court explained:  "The mere assertion that these persons are not presently with the company is insufficient to support a finding of prejudice.  Blue Bell must also show that they are unavailable to testify."  596 F.2d at 1279.

attributable to Watkins); *Great Atl. & Pac. Tea Co.*, 735 F.2d at 84 ("Any record unavailable by virtue of A&P's failure to comply with the record-preservation requirements of 29 C.F.R. § 1602.14 (1983) would not, of course, qualify as establishing prejudice.") (*dicta*).

In this instance, the EEOC asked Propak to provide relevant documents during its investigation, and Propak responded with approximately ten thousand documents that the EEOC still has in its possession. *See* JA-87 (R.7-5 at 3, ¶ 11). Copies of these documents would have been available to Propak through the normal course of discovery under the court rules. In opposing Propak's laches defense, the EEOC reasonably believed that Propak's ability to obtain copies of its own documents from the EEOC would cure any prejudice Propak was claiming due to its apparent destruction of these same documents.

Given these facts and this legal precedent, the EEOC reasonably believed Propak had not established the requisite "prejudice" on the bases Propak advanced in its motion for summary judgment. Propak had asserted only that managers who no longer worked for it might be difficult to locate and would likely not remember relevant events, and that some records no longer existed (because Propak had destroyed them while EEOC's administrative process was pending). The EEOC was reasonable in concluding that these mere assertions did not demonstrate the prejudice required for a laches defense in light of judicial rulings that a defendant

asserting prejudice based on witness unavailability or lost or faded memories must demonstrate that witnesses actually cannot be found or, in fact, do not recall necessary information. The EEOC was also reasonable in concluding that Propak's assertion of missing records did not establish "prejudice" in light of Propak's failure to specify what records were missing, the fact that EEOC had copies of the documents Propak had provided during the investigation, and, most significantly, evidence suggesting Propak destroyed these records while the EEOC's administrative proceedings were still pending.

The district court concluded that Propak had established prejudice, and there is some older, out-of-circuit support for the district court's ruling. *See, e.g.*, JA-437 (R.41 at 26, citing *EEOC v. Liberty Loan Corp.*, 584 F.2d 853, 858 (8th Cir. 1978) (affirming dismissal of EEOC suit based on laches because, *inter alia*, the defendant demonstrated "prejudice" based on "the hardship of locating former employees" to procure their testimony in defense of the charges)). The Supreme Court made clear in *Christiansburg*, however, that the mere fact the district court ruled against the EEOC on the merits is not a basis for the imposition of fees.

The district court here plainly ignored *Christiansburg*'s caution against *post hoc* reasoning when the court characterized its prior laches ruling as the "law of the case" and relied on it as the basis for imposing fees. *See* JA-560, 566 (R.57 at 6, 12) (referring to its findings of unreasonable delay and prejudice in its prior laches

decision as "law of this case" with respect to the question of "reasonableness" of EEOC's decision to pursue this lawsuit). Contrary to the district court's approach, *Christiansburg* required the district court to undertake a separate "reasonableness" analysis that considered whether EEOC had a reasonable—albeit ultimately unsuccessful—basis to believe Propak had not established "prejudice" under the standards articulated by this and other courts.

Had the district court undertaken this required step, it would have been compelled to conclude that the EEOC did not act unreasonably when it opposed Propak's laches defense. As explained above, viewing this record in light of the legal principles articulated by this Court and the application of those principles by other district courts, the EEOC reasonably concluded that Propak had not demonstrated the "prejudice" prong of a laches defense. Instead of considering the reasonableness of the Commission's legal position, the district court relied, as dispositive, on its prior laches ruling as the basis for awarding fees. In so doing, the court committed legal error and, consequently, the court abused its discretion under 42 U.S.C. § 2000e-5(k).

The district court's reasoning is flawed in other significant respects, as well. In its decision imposing fees, the court stated repeatedly, but incorrectly, that witnesses and claimants could not be found, and then relied on that misstatement as evidence that EEOC's opposition to Propak's laches defense was unreasonable.

41

For example, the court misstated that "[t]he EEOC knew by November 2007 that it could not locate purported victims and witnesses." JA-564 (R.57 at 10). The court then relied on this misstatement to conclude that the EEOC acted unreasonably by "press[ing] for discovery" on the issue of prejudice "despite the fact that [EEOC's] own efforts in November 2007 to locate victims and witnesses had been unsuccessful." JA-565 (R.57 at 11). The court further misstated that "[d]uring the limited discovery on the issue of prejudice *it was again reaffirmed* that the purported victims and witnesses could not be located." *Id.* (emphasis added).[9]

The EEOC, in continuing to oppose Propak's laches defense, reasonably believed that EEOC's failure to locate Propak's former managers during the investigation did not establish that these witnesses could not be located, because the EEOC's search for these witnesses was not thorough. Rather, after undertaking minimal efforts to locate these witnesses, the EEOC determined that speaking with them was unnecessary and stopped looking. *See* JA-535 (R.49 at 9) (explaining that EEOC's reasonable cause finding depended on statistical analyses, not testimony of Propak's hiring officials). Given that Propak carried the burden of establishing all of the elements of its affirmative defense and that Propak's witness

---

[9] The court also misstated: "The purported class of individuals allegedly discriminated against had last existed in 2004 and *it was uncertain that those individuals could even be identified*." JA-563 (R.57 at 9; emphasis added). And the court asserted that the EEOC's argument that "monetary damages were still available . . . overlooks the fact that the class of victims could not be identified." JA-564 (R.57 at 10 n.3).

admitted the company made no efforts whatsoever to locate these former managers, it was eminently reasonable for the EEOC to believe that the *EEOC's* failure to located these witnesses did not satisfy *Propak's* burden to prove prejudice based on the unavailability of these witnesses. The district court erred as a matter of law to the extent it imposed fees, in part, on the ground that the EEOC acted unreasonably in opposing laches because EEOC knew witnesses could not be located.

The district court was also wrong as a matter of fact in stating that claimants could not be located, because the undisputed record shows the EEOC had located claimants. The EEOC advised the court that EEOC staff located prospective claimants during the investigation, and the district court's decision refers to that fact. *See* JA-561 (R.57 at 7) ("In May and June 2006, four potential class members were interviewed."). The EEOC also advised the court that it had interviewed potential claimants when the Commission was assessing the case for possible litigation, and argued in its opposition to fees that prospective claimants had been identified. *See* JA-260-264 (R.21-2 at 4-8, EEOC chronology of events); JA-535 (R.49 at 9). The court further wrongly asserted that discovery reaffirmed the inability to locate potential claimants (referred to as "victims" by the court). JA-565 (R.57 at 11). This issue was never addressed in discovery. Thus, in

imposing fees on the EEOC, the district court relied, in part, on a "fact"—the EEOC's supposed inability to locate claimants—that is contradicted by the record.

Although the ability to locate potential claimants is not even remotely relevant to the question of laches, the district court considered it relevant to whether EEOC reasonably filed and continued to litigate this case. To the extent the court premised its finding that the EEOC acted unreasonably on its belief that the EEOC was unable to locate claimants, the court abused its discretion because not only is this an irrelevant consideration, but the only record evidence on this point—EEOC's multiple representation that it had identified and communicated with potential claimants—directly contradicts the court's factual conclusion.

## C. In assessing whether there was unreasonable or unjustified delay, the district court erred in considering the time during which the EEOC was investigating this matter.

When laches is asserted against the EEOC, the proper timeframe for assessing whether any "delay" is unreasonable or unexplained is from the failure of conciliation to the filing of the complaint in court—here, a period of approximately ten months. As noted above, most courts cite *Occidental Life* as the source of authority for holding that laches applies to the EEOC. *See supra* at 23. As we further explained, the Supreme Court has never held that laches applies to the EEOC, as an arm of the federal government, and the EEOC contends that the Supreme Court, in *Occidental Life*, did not mean for its comments to be construed

as authority for courts to dismiss an EEOC lawsuit on the grounds of laches. *See supra* at 23-25.

Nevertheless, to the extent *Occidental Life* supports some form of redress for unreasonable EEOC delay, the proper timeframe for a court to consider is from the failure of conciliation to the filing of the complaint. As the Supreme Court explained, if there is "inordinate EEOC delay in filing the action *after exhausting its conciliation efforts*," a court has power to provide appropriate relief to a defendant by, for instance, limiting backpay relief. *Occidental Life*, 432 U.S. at 373 (emphasis added). This language, although not the holding in the case, makes it clear that the proper timeframe for assessing the reasonableness of any delay is the time between the end of conciliation and the filing of EEOC's lawsuit.

In explaining why respondent employers are not prejudiced by the absence of a statute of limitations on EEOC lawsuits, the Supreme Court noted that Title VII requires the EEOC to provide a respondent employer with prompt notice that a charge has been filed. *See Occidental Life*, 432 U.S. at 359, 372; 42 U.S.C. § 2000e-5(b) (EEOC must serve notice on employer within ten days). Thereafter, the employer is on notice that it must take steps to preserve evidence and testimony and otherwise to protect its ability to defend any lawsuit that the charging party or the EEOC may later file. As the Supreme Court explained:

> Unlike the litigant in a private action who may first learn of the cause
> against him upon service of the complaint, the Title VII defendant is

45

> alerted to the possibility of an enforcement suit within 10 days after a charge has been filed. This prompt notice serves, as Congress intended, to give [the employer] an opportunity to gather and preserve evidence in anticipation of a court action.

*Occidental Life*, 432 U.S. at 372. The Court further noted that EEOC regulations require the Commission to promptly notify a respondent when the Commission has made a determination of reasonable cause and when the Commission has terminated its efforts to conciliate a dispute. *Id.* at 372-73. These procedural requirements protect a defendant employer through the end of conciliation. It is only after conciliation fails, if significant time passes without any notice from the EEOC that litigation is still being considered, that an employer might properly conclude that the EEOC plans no further action and could, on that basis, incur the type of prejudice that might warrant a response from the court. *Id.* at 373.

This rule—that courts should consider only the time following the end of conciliation when assessing "delay"—is compelled not only by the clear language in *Occidental Life*, but also by the purpose underlying the equitable doctrine of laches. Laches is a judicially created equitable doctrine, the purpose of which is to provide relief to a party when another party sleeps on its rights without justification. The doctrine accomplishes this goal by "bar[ring] a suit in equity that has been brought so long *after the cause of action accrued* that the court finds that bringing the action is unreasonable and unjust." *Lyons P'ship*, 243 F.3d at 797-98 (citation omitted) (emphasis added). The doctrine "is properly relevant only where

the claims presented may be characterized as equitable, rather than legal." *White v. Daniel*, 909 F.2d at 102 (citation omitted). Furthermore, where the harm is ongoing and "the claim is one for injunctive relief, laches would not apply." *Haley Paint Co. v. E.I. Du Pont De Nemours & Co.*, 279 F.R.D. 331, 337 (D. Md. 2012) (citing *Lyons P'ship*, 243 F.3d at 798).

During an administrative investigation, the EEOC is not a "party," and the EEOC's "cause of action" has not "accrued," because the EEOC's right to bring a lawsuit does not yet exist. The EEOC is an impartial federal enforcement agency tasked with uncovering whether a violation occurred, not an interested party with legal rights. *See Occidental Life*, 432 U.S. at 368. Even after issuing a finding of reasonable cause to believe discrimination occurred, EEOC has no authority to file a lawsuit until the agency has completed its efforts to resolve the case through conciliation. *See id.*; 42 U.S.C. §§ 2000e-5(b), (f)(1).[10] Thus, assuming laches applies to the EEOC, it could not properly apply until the EEOC completes its congressionally mandated administrative tasks and acquires the statutory authority

---

[10] As the Supreme Court explained: "[U]nder the procedural structure created by the 1972 amendments [to Title VII], the EEOC does not function simply as a vehicle for conducting litigation on behalf of private parties; it is a federal administrative agency charged with the responsibility of investigating claims of employment discrimination and settling disputes, if possible, in an informal, noncoercive fashion. Unlike the typical litigant against whom a statute of limitations might appropriately run, *the EEOC is required by law to refrain from commencing a civil action until it has discharged its administrative duties*." *Occidental Life*, 432 U.S. at 368 (emphasis added).

to file a lawsuit, which occurs only after conciliation has failed. To take into account the period of time when EEOC is investigating a charge as an impartial fact-finder conflicts with the definition and basic purpose of the laches doctrine.

The Fifth and Sixth Circuits have both adopted the rule that, for purposes of a laches defense being raised against the EEOC, "delay" should be measured only from the time conciliation fails. *See, e.g.*, *EEOC v. Watkins Motor Lines, Inc.*, 463 F.3d at 439; *Nat'l Ass'n of Gov't Employees v. City Pub. Serv. Bd. of San Antonio*, 40 F.3d 698, 708 (5th Cir. 1994); *see also EEOC v. Autozone, Inc.*, 258 F. Supp. 2d 822, 827 (W.D. Tenn. 2003) (separating EEOC's five-year-and-four-month delay into three periods—investigation, conciliation, and post-conciliation—and stating that the latter was the "critical period for assessing the reasonableness of the Commission's delay").

This Court has not had occasion to address this specific argument, but it comports with this Court's analysis in trademark infringement claims. In *Ray Communications, Inc. v. Clear Channel Communications*, for example, this Court reasoned: "'Logic dictates that "unreasonable delay" does not include any period of time before the owner is able to pursue a claim for infringement—otherwise, a trademark owner could be punished for not bringing a claim he had no right to bring.'" 673 F.3d 294, 301 (4th Cir. 2012) (quoting *What-A-Burger of Va., Inc. v. Whataburger, Inc. of Corpus Christi, Tex.*, 357 F.3d 441, 449 (4th Cir. 2004)

(other citations omitted)).  As noted above, the EEOC cannot bring a claim until—and only if—it has investigated a charge, found reasonable cause, and failed to reach a conciliation agreement that satisfies the EEOC.  Under the logic of *Ray Communications*, EEOC's right to pursue a claim in court arises only after conciliation fails.  Therefore, "unreasonable delay" in a laches defense should be assessed based only on the period between the end of conciliation efforts and the filing of the EEOC's lawsuit, as indicated in *Occidental Life*.

If the district court here, in assessing whether any delay was unreasonable, had limited its consideration to the period of time between the failure of conciliation and the EEOC's filing of this lawsuit, it would have been compelled to deny Propak's fee application on the ground that the EEOC had a reasonable basis for arguing that laches did not bar this lawsuit.  Only ten months passed between the end of conciliation in mid-October 2008 and the filing of this lawsuit in mid-August 2009, during which the Commission considered whether to litigate the case, contacted potential claimants by letter and telephone, and secured litigation approval from EEOC headquarters.  *See* JA-263-264 (R.21-2 at 7-8).  Courts that have found unreasonable delay following the end of conciliation have generally done so on much longer periods of time.  *See, e.g.*, *Lockheed Martin*, 514 F. Supp. 2d at 802-03 (thirty months between end of conciliation and filing of complaint constitutes lack of diligence); *EEOC v. Autozone, Inc.*, 258 F. Supp. 2d at 827

(twenty-two month period from end of conciliation to filing of lawsuit, with no reason for this inactivity, amounted to unreasonable delay). We are aware of no court to have held that ten months between the end of conciliation and the filing of EEOC's complaint constituted an unreasonable delay, particularly where, as here, the EEOC explained the passage of time.

Given this precedent, the EEOC certainly had a reasonable basis for believing a court would reject a laches defense based on only a ten-month delay between the end of conciliation and the filing of the complaint. Notably, Propak has pointed to no change in its circumstances during these ten months that might establish the "prejudice" element of a laches defense. Thus, the district court should have denied Propak's request for fees.[11]

## D. Even including the investigation, the EEOC had a reasonable basis to argue the delay here was not unreasonable or unexplained.

Even taking into account the time the EEOC spent investigating this charge, the district court abused its discretion in imposing fees because the EEOC reasonably believed the explanation it provided for the time it took to conduct this investigation was sufficient. The district court in *Lockheed Martin* noted that "[n]o

---

[11]  Although this argument was not specifically raised below, the Commission submits that exceptional circumstances exist here to consider the issue, because failure to do so will result in plain error and as well as a fundamental miscarriage of justice. The Commission therefore urges the Court to consider this legal question. *See Nat'l Wildlife Fed. v. Hanson*, 859 F.2d at 318 (finding exceptional circumstances existed to consider on appeal government's argument on calculation of fee award against it, despite government's failure to raise the argument below).

particular period of delay by the EEOC is *per se* invalid" and "'the reasonableness of the EEOC's delay' depends 'on the EEOC's reason for the delay.'" *Lockheed Martin*, 514 F. Supp. 2d at 801 (citing *Autozone*, 258 F. Supp. 2d at 827; other citations omitted). Here, the Commission offered the district court a detailed explanation for the five-and-one-half-year length of this investigation. In the EEOC's opposition to Propak's initial motion to dismiss based on laches, the EEOC explained that the Commission provided prompt notice to Propak and then "continuously pursued the charge" thereafter. *See* JA-69-70 (R.7 at 4-5). The declaration of the EEOC's investigator Michael Whitlow (JA-85-87; R.7-5), and the chronology the EEOC filed with the district court (JA-257-264; R.21-2) show that, excluding periods where the EEOC granted Propak's several requested extensions or where witnesses were unavailable, the Commission engaged in relatively continuous activity gathering, reviewing, and analyzing evidence. *See also* JA-70-76 (R.7 at 5-11) (EEOC opposition to Propak motion to dismiss); JA-318-323,329 (R.29 at 3-8, 14) (EEOC opposition to Propak motion for summary judgment). Based on precedent within this circuit and others, the EEOC had a reasonable basis to believe its explanation for the length of the investigation could defeat Propak's laches defense.

In *Lockheed Martin*, for instance, the district court found no unreasonable delay because the EEOC's explanation showed the investigation "was not only

continuous, but also was productive toward the ultimate finding of discrimination." 514 F. Supp. 2d at 802. The court further stated that "[t]he delays that did exist, were, at least in part, due to [Lockheed Martin's] own actions." *Id.* Approximately a year of this investigation is attributable to the EEOC's accommodation of Propak's scheduling conflicts or requests for additional time. *See* JA-257-263 (R.21-2 at 1-7). At other points, evidence provided by Propak was waiting to be reviewed and analyzed by the EEOC's over-burdened staff. JA-87 (R.7-5 at 3). During all of this time, however, Propak was on notice that the EEOC was investigating a charge filed by Quintois, including Quintois's allegation that Propak had engaged in general hiring discrimination based on national origin.

Granted, the investigation in *Lockheed Martin* was much shorter than in this case. It is not the specific length of the investigation that matters, however, but the EEOC's explanation for time spent. Here, the EEOC offered the district court a detailed explanation for the time the EEOC spent investigating Quintois's allegation of class-wide hiring discrimination based on national origin.

And there are other examples where courts concluded that an EEOC investigation as long as, or longer than, this one did not constitute unreasonable or unexplained delay based on the same general considerations the EEOC offered here—that the EEOC was engaged in relatively continuous investigative activity that moved the investigation toward a conclusion. In *EEOC v. Jacksonville*

*Shipyards, Inc.*, 690 F. Supp. 995 (M.D. Fla. 1988), for example, the court rejected a laches defense where six years and ten months passed between the filing of the first charge and the filing of EEOC's lawsuit—a period of time comparable to the six years and eight months between the filing of Quintois's charge and this lawsuit. The court found this delay "not inexcusable" because "EEOC has exhibited a continuing interest in the pursuit of the discrimination charges and this interest was repeatedly communicated to defendant." *Id.* at 1000. The court found a two-year period of inactivity justified because EEOC was deferring to another federal agency's investigation of the same workplace. *Id.* The court found the remaining four years reflected "diligence on the EEOC's part in the pursuit of the underlying charges." *Id.* at 999-1000. *See also Great Atl. & Pac. Tea Co.*, 735 F.2d at 81-84 (reversing finding of inexcusable delay because during nine years between filing of charge and filing of EEOC's lawsuit, EEOC was compiling, reviewing, and analyzing voluminous evidence).

In opposing Propak's laches defense below, the EEOC reasonably believed this case was similar to *Jacksonville Shipyards* and that applying the same analysis here would yield a similar result. The Commission provided the district court with a chart showing activity every couple of months, if not more frequent, except for a few periods that the EEOC explained involved EEOC review of voluminous documents and analysis of complex statistical data. Although the district court

ultimately disagreed with the Commission's position, the EEOC's position was not unreasonable on these facts, in light of legal precedent in this and other circuits.

The district court committed legal error when it ruled that its summary judgment finding of "unreasonable delay" was the "law of the case" with respect to the court's inquiry as to whether the EEOC acted unreasonably in opposing Propak's laches defense. The imposition of fees could not rest on the court's prior finding of "unreasonable delay." Rather, the district court was required to undertake a wholly separate consideration under the *Christiansburg* standard to determine whether it was "frivolous or unreasonable" for the EEOC to have opposed Propak's contention of unreasonable delay. The question of what constitutes "unreasonable delay," like the question of "prejudice," entails a very fact-specific inquiry that depends on the circumstances in each case. There is no certainty, in advance, that a specific set of facts will yield any particular result from the court. It is quite possible, therefore, for the EEOC to advance a position that is ultimately unsuccessful, but not frivolous or unreasonable. *See, e.g.*, *Christiansburg*, 434 U.S. at 414-15, 423-24 (agreeing EEOC was wrong in its interpretation of its statutory authorization to sue under the 1972 amendments to Title VII, but affirming district court's refusal to impose fees because the EEOC's statutory interpretation was not frivolous). That is what the EEOC did here.

The district court also erred in imposing fees because it mischaracterized the EEOC's investigation in several critical respects. The court wrongly stated, for example, that the EEOC sued Propak "after an eight year investigation," JA-564 (R.57 at 10); the investigation actually lasted approximately five-and-one-half years. The court also misstated that the EEOC's cause determination was Propak's first notification that the investigation was designated a class case. JA-562 (R.57 at 8). To the contrary, the allegation of class-wide hiring discrimination was reflected on the face of Quintois' charge and was thereafter the subject of discussion between EEOC staff and Propak's counsel. *See* JA- 17 (R.4-2); JA-259-260 (R.21-2 at 3-4).

The court's imposition of fees suffers from a further defect in that, when the court reviewed the EEOC's investigation for purposes of assessing "unreasonable delay" the court overstepped the limited role of judicial review of EEOC administrative functions. Congress made administrative investigations under Title VII the responsibility of the EEOC. *See* 42 U.S.C. § 2000e-5(b). In a variety of contexts, this Court and other circuits have observed that it is not the court's proper role to second guess how the EEOC should accomplish the tasks Congress has assigned to it.

For instance, in the context of judicial enforcement of EEOC administrative subpoenas, this Court has stated repeatedly that a court's role is "'sharply limited'"

and the court will "'defer to [the EEOC's] own appraisal of what is relevant so long as it is not obviously wrong.'" *EEOC v. Randstad*, 685 F.3d 433, 442 , 448 (4th Cir. 2012) (citations omitted). Similarly, this Court and others have held there is no judicial review of an EEOC determination of reasonable cause to sue. *See Georator Corp. v. EEOC*, 592 F.2d 765,767-69 (4th Cir. 1979); *see also EEOC v. Caterpillar, Inc.*, 409 F.3d 831, 833 (7th Cir. 2005); *Borg-Warner Protective Servs. Corp. v. EEOC*, 245 F.3d 831, 834-35 (D.C. Cir. 2001). This Court and others have also deferred to the EEOC when determining whether EEOC conciliated a case sufficiently to satisfy Title VII's pre-suit requirements. *See EEOC v. Keco Indus., Inc.*, 748 F.2d 1097, 1102 (6th Cir. 1984); *cf. EEOC v. Am. Nat'l Bank*, 652 F.2d 1176, 1185-86 (4th Cir. 1981) (deferring generally to EEOC's conciliation of hiring claims with respect to one bank branch as sufficient to permit EEOC to litigate hiring claims with respect to other bank branches).

Given this body of precedent concerning the deference courts properly accord EEOC's exercise of its administrative functions, the district court's scrutiny here was wholly improper. The court criticized not only the length of the EEOC's investigation, but what steps the EEOC undertook and the order in which  the EEOC took them, and criticized the EEOC for matters outside its control such as the scheduling of witnesses. *See* JA-560-563 (R.57 at 6-9). The court gave no consideration to the time the EEOC would need, after gathering information, to

review and analyze the data Propak provided.  To the extent the district court's determination of "unreasonable delay" flowed from this improper scrutiny and thereafter formed the basis for the court's imposition of fees on the EEOC, the district court erred as a matter of law and abused its discretion.

**CONCLUSION**

For the foregoing reasons, the district court's award of attorneys' fees against the EEOC should be reversed.

**STATEMENT REGARDING ORAL ARGUMENT**

The EEOC believes that oral argument will assist the Court in understanding why the district court's award of fees against the EEOC in this case constitutes an abuse of the district court's discretion and why the district court's explicit reliance, as a basis for imposing fees on the EEOC, on its prior decision dismissing the EEOC's lawsuit based on laches constitutes an error of law.

Respectfully submitted,

P. DAVID LOPEZ
General Counsel


LORRAINE C. DAVIS
Acting Associate General Counsel

/s/   Susan R. Oxford
_____

Susan R. Oxford
Attorney
U.S. EQUAL EMPLOYMENT

OPPORTUNITY COMMISSION
Office of General Counsel
131 M St., N.E., 5th Floor
Washington, D.C. 20507-0001
(202) 663-4791
susan.oxford@eeoc.gov

## CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because it contains 13,941 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word 2003 in Times New Roman 14 point.

/s/  Susan R. Oxford

Susan R. Oxford
Attorney
U.S. EQUAL EMPLOYMENT
OPPORTUNITY COMMISSION
Office of General Counsel
131 M St., N.E., 5th Floor
Washington, D.C. 20507-0001
(202) 663-4791
susan.oxford@eeoc.gov

Dated:  August 21, 2013

## CERTIFICATE OF SERVICE

I, Susan R. Oxford, hereby certify that on August 21, 2013, I filed the EEOC's opening brief electronically with this Court, using the Court's electronic case filing (CM/ECF) system, and served a copy of this brief on the same date, using the Court's electronic case filing system, to the following CM/ECF user:

Counsel for Propak Logistics:

John D. Cole, Esq.
Nexsen Pruet, PLLC
Carillon Building
227 West Trade Street, Suite 1550
Charlotte, North Carolina 28202


/s/  Susan R. Oxford
_____

Susan R. Oxford
Attorney
EEOC, Office of General Counsel
131 M Street, N.E.
Washington, D.C. 20507
(202) 663-4791
susan.oxford@eeoc.gov